**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| GAVIN POWER, LLC, | |
| Plaintiff, | |
| v. | Case No. 2:24-cv-00041-MHW-EPD |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and MICHAEL S. REGAN in his official capacity as ADMINISTRATOR OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | |
| Defendants. | |

<u>**REVISED RULE 26(f) REPORT**</u>

Pursuant to Federal Rule of Civil Procedure 26(f), a meeting was initially held on February 15, 2024, and was attended by:

Stacey L. VanBelleghem, Jason R. Burt, Kevin R. Carter, and James D. Friedland, counsel for Plaintiff Gavin Power, LLC ("Gavin" or "Plaintiff"), and Perry M. Rosen, counsel for Defendants U.S. Environmental Protection Agency ("EPA") and Michael S. Regan in his official capacity as Administrator of the EPA (together "Defendants" or the "United States").

Subsequently, the parties exchanged proposed updates to this Report via email. Counsel represent that, during the meeting and subsequent communications, they engaged in a meaningful attempt to meet and confer on the matters outlined below.

1.     <u>CONSENT TO MAGISTRATE JUDGE</u>

Do the parties consent to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)?

_____Yes          **X** **No**

2.     <u>INITIAL DISCLOSURES</u>

Have the parties agreed to make initial disclosures?

_____Yes          **X** **No**          _____The proceeding is exempt under Rule 26(a)(1)(B)

**Plaintiff's Position**

Gavin filed this lawsuit to remedy EPA's violations of the Administrative Procedure Act ("APA") and deprivation of Gavin's fair notice and due process rights under the U.S. Constitution. The EPA actions at issue in this case include disputed findings of regulatory non-compliance regarding coal combustion residuals ("CCR") units at the James M. Gavin Power Plant (the "Facility"), including EPA's retroactive application of a new regulatory interpretation of the Resource Conservation and Recovery Act ("RCRA"). These disputed findings of non-compliance were made under the guise of denying a deadline extension, in a decision EPA previously insisted was appealable only to the D.C. Circuit Court of Appeals ("D.C. Circuit"). EPA sought and obtained a stay of this litigation on that novel jurisdictional theory that the D.C. Circuit had exclusive jurisdiction. But (as Gavin indicated would be the likely outcome) the D.C. Circuit has now confirmed that it lacks jurisdiction over Gavin's case, making clear the case should proceed in this Court. Given that EPA's tactic delayed this case, prolonging Gavin's regulatory uncertainty and compounding its enforcement exposure, EPA should not be allowed to further delay this case, particularly not on a second unsupported theory—this time, that discovery must wait until a motion to dismiss is resolved.

Plaintiff's Amended Complaint For Declaratory and Injunctive Relief ("Amended Complaint") includes APA claims as to EPA's retroactive application of a new regulatory interpretation to the Facility, see Amended Complaint (Dkt. 36) Count I, erroneous findings of fact and unsupported assumptions, see id. Count II, and deprivation of fair notice and/or procedural due process, see id. Count III. These are not the claims that were before the D.C. Circuit. Although the D.C. Circuit held that EPA did not engage in legislative rulemaking in a series of challenged actions, Gavin's claims here do not allege EPA engaged in legislative rulemaking. Gavin's claims here challenge EPA's facility-specific findings in EPA's rejection of a request for a deadline extension ("Final Gavin Denial") related to the Facility. The D.C. Circuit explicitly held that it "lack[s] jurisdiction to review the final Gavin Denial."

The Amended Complaint also includes common law claims for waiver and estoppel. See id. Counts IV-V. The Amended Complaint asserts these common law claims to further challenge EPA's factual findings and compliance determinations regarding the Facility outside the APA. This means, at a minimum, that significant aspects of this litigation are not exempt under Fed. R. Civ. P. 26(a)(1)(B)(i), and the disclosure requirements of Fed. R. Civ. P. 26(a)(1) fully apply at least as to Counts IV and V. Plaintiff is thus entitled to know the identity of individuals involved in EPA's changing interpretations of RCRA and decision to apply its new interpretation retroactively as well as EPA's factual findings and compliance determinations regarding the Facility, the types of information these individuals possess, and the category and location of relevant discoverable material. See Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).

Rule 26(a)(1)(C)'s default initial disclosure deadline is intentionally set to fall before a defendant must generally file, much less obtain a ruling on filing, a motion to dismiss. Accordingly, the Court should follow the common practice of requiring initial disclosures and other discovery to proceed even if a defendant plans to move to dismiss. Defendants offer no reason to deviate from that standard practice—particularly with respect to the common law claims in Counts IV and V.

**Defendants' Position**

Counts I-III of the Amended Complaint are brought under the APA challenging EPA's denial of

Gavin's extension request. That is an action "for review on an administrative record" which is exempt from initial disclosures. Fed. R. Civ. P. 26(a)(1)(B)(1). Gavin therefore bases its claim that it is entitled to initial disclosures on Counts IV and V of the Amended Complaint, asserting claims of waiver and estoppel. But, as EPA will elucidate in a Motion to Dismiss this action to be filed on October 16, 2024, waiver and estoppel are defenses only; they are not affirmative claims that may be brought in a Complaint. Thus, they may not form a basis for initial disclosures (or for discovery). Moreover, waiver and estoppel, even when properly brought as defenses, are not available against the United States as pleaded. Accordingly, there is no basis for initial disclosures.

Additionally, neither initial disclosures nor discovery should be permitted because the Court lacks subject matter jurisdiction to address any of Plaintiff's claims (as EPA further anticipates addressing in its Motion to Dismiss). The Amended Complaint challenges a single administrative order (the "Gavin Order"). All five Counts in the Amended Complaint are based on the argument that the Gavin Order promulgated new regulations or regulatory requirements. But the D.C. Circuit has exclusive statutory jurisdiction over *all* such claims. 42 U.S.C. § 6976(a)(1). Thus, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims, and initial disclosures should not be required where the Court lacks jurisdiction.

Finally, the D.C. Circuit has now ruled on Gavin's claim that the Gavin Order created new regulatory requirements, the very claim Gavin makes here in each of the five Counts of the Amended Complaint. The D.C. Circuit comprehensively rejected Plaintiff's claims on the merits; specifically rejecting the claim that the Gavin Order promulgated new or amended regulatory requirements, *Electric Energy, Inc. v. EPA*, 106 F.4th 31 (D.C. Cir. 2024). Under the doctrine of issue preclusion, Gavin may not relitigate issues that have already been finally decided, and it certainly may not do so in this Court, which lacks jurisdiction to address those claims.

Accordingly, EPA objects to initial disclosures being made in this case.

If yes, such initial disclosures shall be made by:    **[see below]**         .

**Plaintiff's Position**

Fed. R. Civ. P. 26(a)(1)(C) requires parties to make initial disclosures "at or within 14 days after the parties' Rule 26(f) conference," and there is no reason to deviate from the Rule. The discovery conference took place on February 15, 2024, which meant the initial disclosure deadline should have fallen 14 days later, on February 29, 2024. Gavin believes resetting the deadline to 14 days after the Court's entry of a scheduling order provides Defendants ample time to fulfill this basic requirement. To the extent Defendants anticipate filing counterclaims in the future, that would not justify forgoing or delaying initial disclosures as to the currently operative pleadings. If necessary, additional or amended disclosures can be made at a later date, as would ordinarily be required in the case of an amended pleading or the subsequent joinder of parties pursuant to Fed. R. Civ. P. 26(a)(1)(D).

**Defendants' Position**

As outlined above, this action is exempt from initial disclosures. Additionally, no actions, including initial disclosures, should occur until after the United States' Motion to Dismiss this case has been decided by the Court, since the Court should not issue orders permitting initial disclosures or discovery unless and until it determines whether it has jurisdiction over the claims in this case. In

the event the Court ultimately requires the United States to propound initial disclosures, the United States respectfully requests that it be given thirty (30) days from the date of such order to provide initial disclosures.

3.   <u>VENUE AND JURISDICTION</u>

Are there any contested issues related to venue or jurisdiction?

  X  Yes       No

If yes, describe the issue:

**<u>Plaintiff's Position</u>**

Defendants' previous challenge to this Court's jurisdiction was based on a novel theory that RCRA provides the D.C. Circuit exclusive jurisdiction over facility-specific claims like Gavin's challenge here. Gavin filed a protective petition in the D.C. Circuit explaining why that court lacked jurisdiction, but preserving its right to proceed there if the D.C. Circuit concluded it did have exclusive jurisdiction. The D.C. Circuit combined Gavin's protective petition with petitions by other regulated entities who asserted claims (primarily alleging that EPA had conducted legislative rulemaking without following the proper administrative procedures) that did not turn on or challenge the Facility-specific findings as to Gavin, which are the subject of this case. In its June 28, 2024 decision, the D.C. Circuit rejected EPA's jurisdictional argument and agreed with Gavin that the D.C. Circuit lacked jurisdiction over the Gavin-specific claims. Accordingly, there can be no further argument on this point; Gavin properly filed its case in this Court.

The Amended Complaint challenges the merits of EPA's action in the Final Gavin Denial, upon which the D.C. Circuit did not rule. Accordingly, *none* of the five Counts in the Amended Complaint conflict with, or are precluded by, the D.C. Circuit's recent opinion.

As previously explained, the Amended Complaint challenges the findings and compliance determinations of EPA in the Final Gavin Denial, not EPA's promulgation of rules or requirements under RCRA. Counts I-III of the Amended Complaint assert APA-based claims over which this Court, as "a court of competent jurisdiction," <u>see</u> 5 U.S.C. §§ 703-04, may assert original subject matter jurisdiction, <u>see</u> 28 U.S.C. § 1331. The Court likewise has supplemental jurisdiction over the common law claims asserted in Counts IV-V, as these claims "are so related" to the APA-based claims that "they form part of the same case or controversy." 28 U.S.C. § 1367. Personal jurisdiction over Defendants exists under both Fed. R. Civ. P. 4(i) and 28 U.S.C. § 1391(e). Venue properly lies in the Southern District of Ohio pursuant to 28 U.S.C. § 1391(e)(1)(C).

**<u>Defendants' Position</u>**

Each of the five Counts in the Amended Complaint is based on the allegation that the Gavin Order issued new or amended regulatory requirements. As noted, the D.C. Circuit has exclusive jurisdiction over any claim challenging a regulation or regulatory requirements. 42 U.S.C. § 6976(a)(1). The D.C. Circuit fully addressed the merits of Plaintiff's arguments that the Gavin Order contained new regulatory requirements, expressly rejecting those arguments. Since the statute declares that the D.C. Circuit has exclusive jurisdiction to address such issues, and that court has determined that Gavin's arguments wholly lack merit, Gavin may not now relitigate its claims here, as this Court

lacks jurisdiction and Plaintiff's arguments, which are otherwise barred by issue preclusion as well as other jurisdictional defects that EPA anticipates raising in its Motion to Dismiss.  To the extent the Court might ultimately conclude that it has subject matter jurisdiction over Plaintiff's claims, Defendants do not contest venue.

4.     <u>PARTIES AND PLEADINGS</u>
    a.   The parties agree that any motion or stipulation to amend the pleadings or to join additional parties shall be filed by Plaintiff no later than **21 days after Defendants' file their Answer**, should an Answer be required to be filed.  Defendants shall bring or amend any counterclaims within **21 days of filing their Answer**.  <u>Defendants shall not be deemed to have waived any compulsory counterclaims by not filing such counterclaims with their Answer.</u>

    b.   If the case is a class action, the parties agree that the motion for class certification shall be filed by **n/a**.

5.     <u>MOTIONS</u>
    a.   Are there any pending motions(s)?

    \_\_\_\_\_Yes     **X**   **No**

    However, on October 16, 2024 EPA intends to file a Motion to Dismiss as its initial response to the Amended Complaint.

    If yes, indicate which party filed the motion(s), and identify the motion(s) by name and docket number: **n/a**

    b.   Are the parties requesting expedited briefing on the pending motion(s)?

    \_\_\_\_\_Yes     X   No

    If yes, identify the proposed expedited schedule:

    Opposition to be filed by_____; Reply brief to be filed by_____.

6.     <u>ISSUES</u>
Jointly provide a brief description of case, including causes of action set forth in the complaint, and indicate whether there is a jury demand:

**<u>Plaintiff's Description of the Case</u>**

On November 30, 2020, the Facility submitted a request pursuant to EPA's RCRA regulations for an extension of the deadline to commence closure of a CCR impoundment, the Bottom Ash Pond ("BAP").  On November 18, 2022, EPA denied Plaintiff's request primarily on the basis of a wholly separate impoundment at the Facility, the Fly Ash Reservoir ("FAR"), that EPA asserted for the

first time did not comply with EPA regulations for closing surface impoundments.  This despite that the FAR had already been closed for a year and a half.

Before EPA's January 11, 2022 release of its proposed denial of the Facility's extension request, EPA provided no notice to the Facility of any purported noncompliance with respect to the prior closure (or otherwise).  To the contrary: (1) EPA's regulations required the Facility to create a detailed closure plan and to post the plan and related technical documents on a compliance website for public and regulator inspection, which the Facility did; (2) EPA required that a closure plan receive a certification of compliance with the applicable requirements by a Qualified Professional Engineer, which the Facility sought, received, and posted on its compliance website for inspection; (3) the closure was subsequently implemented in accordance with that closure plan under the oversight of the Ohio Environmental Protection Agency; and (4) a Qualified Professional Engineer certified on July 30, 2021 that the closure was complete and complied with both the written closure plan and EPA regulations, and the Facility posted that certification on its compliance website for inspection.  Only after the Facility spent millions of dollars to complete its years-long closure of the FAR in reliance on EPA's then-effective regulatory interpretation did EPA use the extension request for the BAP to, for the first time, reveal a new regulatory interpretation under which EPA asserts that the FAR closure was not in compliance with RCRA.  Moreover, the primary basis for this finding of noncompliance was a new interpretation prohibiting "waste below the water table," which EPA had never previously communicated or enforced, and was inconsistent with EPA's longstanding prior interpretation.  EPA applied this new interpretation retroactively, thus depriving the Facility of an opportunity to comply prior to closure.

Plaintiff therefore challenges EPA's findings and compliance determinations within and underlying the denial of the Facility' extension request, in five counts:

(I)     under the APA, for unlawful retroactive regulation, to the extent EPA is applying a new regulatory interpretation to the Facility retroactively, after the Facility closed the FAR in compliance with, and reliance on, EPA's regulatory interpretation in effect at that time;

(II)    under the APA, as arbitrary and capricious and/or an abuse of discretion, to the extent EPA's findings of fact and compliance determinations as to the Facility were unsupported and/or erroneous;

(III)   under the APA, for deprivation of fair notice and/or procedural due process, to the extent the Facility was deprived of its right to know in advance the applicable regulatory interpretations and conform its conduct accordingly;

(IV)    on the basis of waiver, to the extent that EPA allowed a four-year, multi-million-dollar closure process to proceed without informing the Facility of any purported noncompliance; and

(V)     on the basis of estoppel, to the extent that EPA could and should have informed the Facility of purported noncompliance that would have been evident in 2016, in advance of the Facility's four-year, multi-million-dollar closure process.

The D.C. Circuit has never considered or ruled on any of the Counts of the Amended Complaint nor did the D.C. Circuit rule on whether the Final Gavin Denial constituted interpretive rulemaking.

There is no jury demand.

**Defendants' Description of the Case**

Under RCRA, 42 U.S.C. § 6901, *et seq.*, Congress directed EPA to issue regulations that, *inter alia*, provide for "protection of the quality of ground waters and surface waters from leachates" from CCR and other wastes. 42 U.S.C. § 6007(a)(2). In response to this directive, in 2015 EPA issued a comprehensive regulation governing the disposal and handling specifically of CCR (the 2015 Rule). That regulation explains that in closing a CCR impoundment while leaving CCR in the impoundment (closure with waste-in-place), the operator must, among other things, (a) "control, minimize or eliminate, to the maximum extent feasible, [1] post-closure infiltration of liquids into the waste and [2] releases of CCR, leachate, or contaminated run-off to the ground or surface waters;" (b) "[p]reclude the probability of future impoundment of water;" and (c) "prior to installing the final cover system," ensure that "[f]ree liquids … be eliminated." 40 C.F.R. §§ 257.102(d)(1)(i), (ii), (2)(i) ("Waste-in-Place regulatory requirements").

In 2018, the D.C. Circuit vacated provisions of the 2015 Rule that had allowed unlined and clay-lined impoundments to remain open until a leak was discovered. The Court found that EPA's failure to require closure of such units violated RCRA's mandate to "develop standards that limit permissible waste sites '[a]t a minimum' to those with 'no reasonable probability of adverse effects on health or the environment from disposal of solid waste.'" *USWAG v. EPA*, 901 F.3d 414, 442 (D.C. Cir. 2018) (quoting 42 U.S.C. § 6944(a)). In 2019, the D.C. Circuit directed EPA to promulgate a new rule setting a deadline for unlined impoundments to initiate closure. EPA responded in 2020, setting a deadline but allowing entities to seek an extension if they could establish that their entire facility complied with all regulatory requirements established in the 2015 Rule, including the waste-in-place closure requirements outlined above.

In the 94-page Gavin Order, EPA denied Gavin's extension request, finding that Gavin had attempted to close an unlined impoundment with tons of CCR sitting in groundwater up to 64 feet deep, resulting in the saturation of up to 40% of the CCR in the unit, and as of the date of the Order had taken no engineering measures to address this situation. EPA explained that such closure fails to satisfy the Waste-in-Place regulatory requirements outlined above. The D.C. Circuit agreed with EPA, finding that the Gavin Order applied existing regulatory requirements; it neither created new requirements nor reinterpreted those requirements, and that Gavin's attempt to close an impoundment with CCR sitting in groundwater violates the express terms of the Waste-in-Place regulatory requirements promulgated in the 2015 Rule.

As to Plaintiff's claims raised here, the Gavin Order applied the existing regulatory requirements to the Plaintiff; the Order did not create new requirements, as the D.C. Circuit expressly found, and thus the Gavin Order is not arbitrary and capricious as Plaintiff contends (Counts I-III). Nor is a party deprived of fair notice of EPA's actions (Count III) when EPA applies regulatory requirements that are clear and have not been revised, as the D.C. Circuit similarly found. Additionally, the United States cannot waive or be estopped from enforcing existing regulatory requirements (Counts IV & V), which is all EPA did in concluding that in closing its impoundment with CCR sitting in 64 feet of groundwater, Plaintiff failed to eliminate free liquids or to control, minimize or eliminate, to the maximum extend feasible, either post-closure releases of CCR leachate to that groundwater or infiltration of liquids (i.e, groundwater) into the CCR. 40 C.F.R. §§ 257.102(d)(1)(i), (ii), (2)(i). Finally, EPA's denial of Gavin's extension request was not arbitrary and capricious, as it was based on a thorough technical analysis which is fully supported by the extensive administrative record.

7.    DISCOVERY PROCEDURES

a.    The parties agree that all discovery shall be completed by **[see below]**. The parties agree to schedule their discovery in such a way as to require all responses to discovery to be served prior to the cut-off date, and to file any motions relating to discovery within the discovery period unless it is impossible or impractical to do so. If the parties are unable to reach an agreement on any matter related to discovery, they are directed to arrange a conference with the Court. To initiate a telephone conference, counsel are directed to join together on one line and then call the Magistrate Judge's chambers or provide the Court with a call -in number.

**Plaintiff's Position**

Plaintiff intends to pursue limited fact and expert discovery. By way of example, with respect to fact discovery, the Complaint alleges common law claims for estoppel and waiver. Certain facts relevant to litigating those claims are not in the administrative record (*e.g.*, the date on which EPA knew, or should have known, that the Facility was closing a CCR impoundment with waste below the water table), nor are those facts directly at issue in the APA claims such that they would naturally fall within the scope of administrative record supplementation. With respect to expert discovery, the Final Gavin Order made conclusory factual and compliance findings based on subjective standards, *e.g.*, whether a written closure plan was "consistent with recognized and generally accepted good engineering practices" under 40 C.F.R. § 257.102(b). It is both possible and proper to assist the Court with expert testimony concerning the application of such standards to the facts at issue here. Discovery should commence immediately upon entry of a scheduling order following the next scheduling conference. *See* Fed. R. Civ. P. 16. Plaintiff proposes a fact discovery deadline of 9 months to commence upon the entry of a scheduling order.

For the second time in this delayed case, EPA asks this Court to grant it relief on the basis that EPA will prevail upon a motion it has not yet filed. Again, there is no precedent to support such a request. EPA is free to challenge Plaintiff's entitlement to pursue discovery; the mechanism to resolve that dispute is a motion to compel or for a protective order. But EPA's belief that it will prevail on a forthcoming motion to dismiss is not a colorable basis even to delay discovery, much less preclude it altogether, without briefing or argument on that topic. It is routine to schedule discovery deadlines even though discovery disputes are likely.

**Defendants' Position**

The United States' Motion to Dismiss will demonstrate that all discovery on Plaintiff's claims should be stayed, as this Court lacks jurisdiction to address Plaintiff's claims. Separately, to the extent this action is not dismissed, it is a fundamental precept that an agency action may be challenged only on the basis of the administrative record that was before the agency when it made the challenged decision (in this case, when it issued the Gavin Order). A party may not circumvent this rule by repackaging its arguments as common law claims that the agency should be estopped from enforcing its regulations or has otherwise waived its right to enforce them. As noted above, these are neither affirmative causes of action that may be included in a complaint nor are these claims available against the United States as pleaded. Accordingly, Plaintiffs' claims provide no basis for allowing discovery.

As the D.C. Circuit found, nothing in the challenged Gavin Order reverses or revises any prior

position EPA had with regard to the application of the regulatory requirements at issue, but even if it did, Plaintiff was required to raise that point in its comments on the proposed Gavin Decision, an 89-page document that Gavin and other entities commented on. Thus, the basis for Plaintiff's challenge should be limited to materials contained in the existing administrative record. Should the Amended Complaint not be dismissed, and should Plaintiff submit discovery requests, the United States intends to move to quash that discovery or otherwise seek a protective order. Only in the event that such motion is denied should a discovery schedule be established. A schedule for any discovery on counterclaims that might be filed in the future by the United States can be established if and when the United States is required to file an Answer and if any counterclaims are thereafter asserted.

b.      Do the parties anticipate the production of ESI?   **X**  **Yes**_____No

If yes, describe the protocol for such production:

**Plaintiff's Position**

Plaintiff is prepared to meet and confer with Defendants in good faith as soon as possible to discuss an appropriate ESI protocol. Plaintiff anticipates that the ESI protocol will include provisions governing issues such search parameters (search terms, custodians, timeframe, etc.), production, storage, and burden.

**Defendants' Position**

 To the extent any discovery is ultimately permitted in this action, the United States agrees to meet with Plaintiff in good faith as Plaintiff proposes.

c.      Do the parties intend to seek a protective order or clawback agreement?  **X**  **Yes**
        No

The parties agree that any discovery in this case should be conducted pursuant to an agreed-upon protective order entered by the Court. Any such protective order will include clawback provisions to protect inadvertently produced privileged material.

If yes, such order or agreement shall be produced to the Court by **[see below]**.

**Plaintiff's Position**

The protective order should be produced to the Court no later than 21 days following issuance of a scheduling order to ensure that there is no undue delay in discovery.

**Defendants' Position**

To the extent any discovery is ultimately permitted in this action, the United States agrees to meet with Plaintiff in good faith to negotiate a protective order that includes a reasonable clawback provision to protect inadvertently produced privileged material.

8.      <u>DISPOSITIVE MOTIONS</u>
    a.      Any dispositive motions shall be filed by **1 month after the close of expert discovery**.

The United States agrees to this proposal only to the extent that discovery is ultimately permitted in this action. As outlined above, Defendants' position is there should be no discovery on Plaintiff's claims in this action, expert or otherwise. Nothing herein should prohibit any party from filing a dispositive motion prior to this deadline or otherwise at any time.

b.    Are the parties requesting expedited briefing on dispositive motions?

     Yes     **X**  **No**

If yes, identify the proposed expedited schedule: **n/a**

Opposition to be filed by_____; Reply brief to be filed by_____.

9.    <u>EXPERT TESTIMONY</u>
  a.  Primary expert reports must be produced by **3 months** after the close of fact discovery. The parties agree that the parties' primary expert reports shall be produced simultaneously.

  b.  Rebuttal expert reports must be produced by **2 months** after the deadline to produce primary expert reports.

The United States agrees to this proposal only to the extent that expert reports or expert testimony is ultimately permitted in this action. As outlined above, Defendants' position is there should be no materials outside of the administrative record to be considered by the Court in any adjudication of Plaintiff's claims, including but not limited to expert reports or testimony.

10.    <u>SETTLEMENT</u>
Plaintiff(s) will a make a settlement demand no later than **7 days** after the close of expert discovery. Defendants will respond **within 14 days** of receipt of Plaintiff's settlement offer. The parties agree to make a good faith effort to settle this case. The parties understand that this case will be referred to an attorney mediator, or to the Magistrate Judge, for a settlement conference. The Court refers cases to settlement throughout the year.

Plaintiff believes that a settlement conference will be most likely to succeed following completion of fact and expert discovery. Prior to such time, it is unlikely that a settlement in this case seeking declaratory and injunctive relief is likely. Since the United States takes the position that there is no discovery permitted on Plaintiff's claims, it is available for settlement discussions whenever Plaintiff feels they would have the best chance of being successful.

The parties understand that they will be expected to comply fully with the settlement conference orders which require, *inter alia*, that settlement demands and offers be exchanged prior to the conference and that principals or approved representatives of the parties attend the conference.

11.    <u>RULE 16 PRETRIAL CONFERENCE</u>
Do the parties request a scheduling conference?

  **X**  Plaintiff would like a conference with the Court prior to it issuing a scheduling order.  Defendants do not believe a conference is necessary but will of course participate should the Court schedule a conference.  The parties would be happy to appear via Zoom or other videographic means if convenient for the Court.

_____ No, a conference is not necessary; the Court may issue a scheduling order after considering this Report.

12.    <u>OTHER MATTERS</u>

Indicate any other matters for the Court's consideration:  **none.**

Signatures:

| Attorneys for Plaintiff Gavin Power, LLC: | Attorneys for Defendants Environmental Protection Agency and Michael S. Regan |
|---|---|
| */s Kevin R. Carter*<br>Kevin R. Carter (OH Bar No. 0082441)<br>Trial Attorney<br>Frost Brown Todd LLP<br>301 East Fourth Street, Suite 3300<br>Cincinnati, OH 45202<br>Phone: (513) 651-6800<br>Fax: (513) 651-6981<br>kcarter@fbtlaw.com<br><br>Timothy J. Hagerty (*pro hac vice*)<br>Frost Brown Todd LLP<br>400 West Market Street, Suite 3200<br>Louisville, KY 40202<br>Phone: (502) 589-5400<br>Fax: (502) 581-1087<br>thagerty@fbtlaw.com<br><br>Stacey L. VanBelleghem (*pro hac vice*)<br>Jason R. Burt (*pro hac vice*)<br>Chase M. Chesser (*pro hac vice*)<br>Latham & Watkins LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, DC 20004<br>Phone: (202) 637-2200<br>Fax: (202) 637-2201<br>stacey.vanbelleghem@lw.com<br>jason.burt@lw.com<br>chase.chesser@lw.com<br><br>Karl Karg (*pro hac vice*)<br>James D. Friedland (*pro hac vice*)<br>Latham & Watkins LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, IL 60611<br>Phone: (312) 876-7700<br>Fax: (312) 993-9767<br>karl.karg@lw.com<br>james.friedland@lw.com<br><br><br>Date: October __, 2024____ | TODD KIM<br>Assistant Attorney General<br><br>*/s Perry M. Rosen*<br>Perry M. Rosen<br>United States Department of Justice<br>Environment & Natural Resources Division<br>Environmental Defense Section<br>P.O. Box 7611<br>Washington, DC 20044<br>Phone: (202) 353-7792<br>Fax: (202) 514-8865<br>perry.rosen@usdoj.gov<br><br>KENNETH L. PARKER<br>United States Attorney<br><br>John Stark<br>Assistant United States Attorney<br>U.S. Attorney's Office for the Southern<br> District of Ohio<br>303 Maroni Blvd., Suite 200<br>Columbus, OH 43215<br>Phone: (614) 469-5715<br><br>OF COUNSEL:<br>Laurel Celeste<br>U.S. Environmental Protection Agency<br>Office of General Counsel<br>William Jefferson Clinton Building<br>1200 Pennsylvania Avenue, NW<br>Mail Code 2344A<br>Washington, DC 20460 |