**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| GAVIN POWER, LLC, | |
| *Plaintiff*, | |
| v. | No. 2:24-cv-41 |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL, | Judge Michael H. Watson |
| | Magistrate Judge Elizabeth P. Deavers |
| *Defendants*. | |

## MOTION TO DISMISS

Defendants, the United States Environmental Protection Agency and its Administrator,

Michael S. Regan (collectively "EPA"), respectfully move to dismiss this action pursuant to Fed.

R. Civ. P. 12(b)(1) and 12(b)(6).  In support of the relief requested in this Motion, the attention

of the Court is respectfully directed to the attached Memorandum in Support of this Motion

submitted herewith.


Respectfully submitted,

OF COUNSEL:

LAUREL CELESTE
U.S. Environmental Protection Agency
Office of General Counsel
William Jefferson Clinton Building
1200 Pennsylvania Ave., NW
Mail Code 2344A
Washington, D.C. 20460

DATE: Oct. 16, 2024

TODD KIM
Assistant Attorney General

PERRY M. ROSEN
United States Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington D.C.  20044
202-353-7792
perry.rosen@usdoj.gov

KENNETH L. PARKER
United States Attorney

JOHN STARK
Assistant United States Attorney
U.S. Attorney's Office for the Southern
  District of Ohio
303 Marconi Blvd., Suite 200
Columbus, Ohio 43215
(614) 469-5715
John.stark@usdoj.gov

*Counsel for Defendants*

## MEMORANDUM IN SUPPORT

## INTRODUCTION

The Resource Conservation and Recovery Act ("RCRA") requires that the Environmental Protection Agency ("EPA") regulate the disposal of coal-combustion residuals ("CCR" or "coal ash"), a byproduct of coal-fired electricity production that contains carcinogens and neurotoxins. Plaintiff, Gavin Power, LLC ("Gavin"), operates a coal-fired power plant in Cheshire, Ohio, that includes three CCR-disposal units.  The unit at issue, the Bottom Ash Pond ("BAP"), is an unlined impoundment.  There is substantial risk of the hazardous constituents of CCR  (e.g., arsenic) leaking from unlined impoundments into the soil and groundwater.

Due largely to this risk, in 2018, the D.C. Circuit Court of Appeals ("D.C. Circuit") invalidated an EPA regulation that had allowed unlined CCR impoundments to continue to operate until they leak.  EPA responded with a rule requiring that unlined impoundments cease receiving waste and initiate the closure process by a fixed deadline.  The default deadline was April 11, 2021, but a regulated party could ask EPA for a limited extension of that deadline for a specific CCR-disposal unit if, among other things, the applicant submitted a demonstration that the entirety of its facility (not just the specific unit for which it sought an extension) was in compliance with all of EPA's rules governing CCR disposal in impoundments and landfills.

Gavin asked EPA to extend the cease-receipt-of-waste deadline for its Bottom Ash Pond until May 4, 2023, to give Gavin additional time to close this impoundment while leaving CCR in the unit, i.e., closure with "waste-in-place."  Because Gavin timely requested an extension, its deadline was tolled until, on November 28, 2022, EPA denied Gavin's request, explaining that Gavin had not demonstrated facility-wide compliance with the CCR-disposal regulations. Among other things, EPA explained that Gavin had failed to demonstrate that another CCR-

disposal unit at the Cheshire plant (the Fly Ash Reservoir) was in compliance with regulatory requirements; a demonstration expressly required to secure an extension.

When denying Gavin's request to extend the Bottom Ash Pond's cease-receipt-of-waste deadline, EPA set a new deadline of April 12, 2023, which was 135 days from the date of its decision and a mere 22 days before the extended deadline sought by Gavin. Ex. A ("Denial Order") at 94. Thus, although EPA ultimately denied its request, Gavin received 97% of the additional time it sought. And before April 12, 2023 even arrived, Gavin had abandoned the reason for seeking an extension (to properly close with CCR remaining in the unit, i.e., with waste-in-place), as Gavin reported that it had accelerated its process and had already closed the Bottom Ash Pond, doing so by removing all of the CCR in the unit ("clean closure"). Amended Complaint ("Am. Compl.") ¶¶ 60, 69.

Gavin challenged EPA's Denial Order in the D.C. Circuit in February 2023, but Gavin did not ask that court to stay the Denial Order. The D.C. Circuit thereafter held that it lacked statutory subject-matter jurisdiction over Gavin's suit because the order denying its request for a May 4, 2023, deadline imposed no new "regulation" or "requirement," but instead merely applied clear existing requirements for closing with waste-in-place. *Elec. Energy, Inc. v. EPA*, 106 F.4th 31, 44-47 (D.C. Cir. 2024).

In January 2024, nearly nine months after the cease-receipt-of-waste deadline for the Bottom Ash Pond had passed, and after Gavin had closed the Bottom Ash Pond by removing all CCR, Gavin sued in this Court to challenge EPA's Denial Order. This Court stayed proceedings pending disposition of Gavin's D.C. Circuit case. After that case was decided, Gavin amended its complaint. The amended complaint still challenges only the Denial Order, which prescribes a deadline for the Bottom Ash Pond of April 12 (as opposed to May 4), 2023.

This Court should dismiss the amended complaint. To prosecute a claim in federal court, a plaintiff must have both a cause of action and Article III standing to invoke that cause of action. The only cognizable cause of action that Gavin invokes is that of the Administrative Procedure Act ("APA"), which provides for judicial review of "final agency action." 5 U.S.C. § 704. That means there must be an "action"—not mere "findings" and "conclusions," *id.* § 706(2)—that not only "mark[s] the consummation of the agency's decisionmaking process" but also is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (cleaned up). The sole aspect of EPA's Denial Order that meets all those criteria is its prescription of a revised deadline for the Bottom Ash Pond to stop receiving waste and initiate closure. But the only injury Gavin alleges that is traceable to the deadline is costs that it allegedly would not have incurred had EPA prescribed a deadline 22 days later. That past injury cannot be redressed by the prospective relief requested in the amended complaint. Thus, insofar as EPA's order is final agency action, Gavin lacks Article III standing to challenge it.

Gavin alleges ongoing injury from the *reasons* EPA gave for denying an extension of the Bottom Ash Pond's cease-receipt-of-waste deadline—most prominently, EPA's finding that Gavin failed to demonstrate that the Fly Ash Reservoir had been closed in accordance with all existing regulatory requirements. According to Gavin, EPA's reasoning means that Gavin either must spend time and money curing the compliance issues that EPA identified, or face both the threat of enforcement action and reputational harm. The problem for Gavin is that reasoning alone is not "action"—much less "final" action—challengeable under the APA. Stripped of the final (but non-injurious) decision to prescribe a deadline for the Bottom Ash Pond, EPA simply has stated a position that Gavin failed to demonstrate that the entire Cheshire plant is in

compliance with RCRA regulations. While that statement of position may prompt Gavin to decide to come into (EPA's view of) compliance to avert potential enforcement action, it does not fix any rights or obligations, or carry legal consequences.

But even if the APA entitled Gavin to challenge EPA's position that the Cheshire plant is out of compliance with RCRA requirements, the doctrine of issue preclusion forecloses the bulk of Gavin's challenge. The D.C. Circuit entered a final judgment dismissing Gavin's petition for review of the Denial Order because the order did not impose a new regulation or requirement—a missing prerequisite to the court of appeals' statutory subject-matter jurisdiction. Gavin wants to relitigate that issue in this Court, as all five Counts of the Complaint are premised by and large on Gavin's belief that the requirements EPA found not to be satisfied at the Cheshire plant were newly announced, an argument the D.C. Circuit fully considered and soundly rejected. Gavin is foreclosed from making that same argument to a second court.

Finally, at the very least, the last two counts of Gavin's amended complaint—"waiver" and "estoppel"—fail to state a claim. Both are defenses, not affirmative claims that may be pleaded in a complaint. And even as defenses to some potential future enforcement action, Gavin has failed to plead the elements of such defenses. The government is not subject to waiver and estoppel on the same terms as private litigants, and Gavin does not allege affirmative misconduct or malicious intent, both of which would be necessary for the Court to entertain a waiver or estoppel defense.

## STATEMENT OF FACTS

### A.      Statutory and Regulatory Background

RCRA instructs EPA to promulgate regulations addressing the disposal of solid wastes, paying special attention to the contamination of groundwater. *E.g.*, 42 U.S.C. §§ 6901(b)(4),

4

6907(a)(2) (requiring EPA to provide for "protection of the quality of ground waters and surface waters from leachates" of solid wastes). Such contamination is of particular concern with regard to CCR, which contains carcinogens and neurotoxins that can lead to elevated probabilities of cancer in skin, liver, bladder, and lungs, as well as serious non-cancer infirmities. *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 421 (D.C. Cir. 2018) ("*USWAG*"). Accordingly, in 2015 EPA promulgated regulations codified at 40 C.F.R. Part 257, Subpart D, that govern CCR disposal and management. 80 Fed. Reg. 21,302 (Apr. 17, 2015) ("2015 Rule").

The 2015 Rule explains how to close an impoundment without removing the CCR, i.e., closure with waste-in-place. An operator cannot simply cover the impoundment and walk away, but instead must:

> (a) "control, minimize or eliminate, to the maximum extent feasible, [1] post-closure infiltration of liquids into the waste and [2] releases of CCR, leachate, or contaminated run-off to the ground or surface waters";
>
> (b) "[p]reclude the probability of future impoundment of water"; and
>
> (c) "prior to installing the final cover system," ensure that "[f]ree liquids" are "eliminated."

40 C.F.R. § 257.102(d)(1)(i)-(ii), (2)(i). ("Waste-in-Place Closure Requirements").

In 2018, the D.C. Circuit vacated provisions of the 2015 Rule that allowed unlined CCR impoundments to remain open unless and until a leak was discovered. The court explained that leaks could go undiscovered and that a leaking unit can result in "contaminants [moving] into the underlying soil and groundwater, threatening sources of drinking water … through harmful constituents that migrate through groundwater." *USWAG*, 901 F.3d at 422. The court found that EPA's failure to require closure of unlined impoundments violated RCRA's mandate to "develop standards that limit permissible waste '[a]t a minimum' to those with 'no reasonable probability of adverse effects on health or the environment from disposal of solid waste.'" *Id.* at 442

5

(quoting 42 U.S.C. § 6944(a)).  Consistent with the D.C. Circuit's direction, EPA was directed to set a deadline for such impoundments to initiate closure.  *See Waterkeeper All. v. EPA*, D.C. Cir. No. 18-1289, Doc. 1777351 (Mar. 13, 2019).

In 2020, EPA issued regulations setting a default deadline of April 11, 2021, for unlined surface impoundments containing CCR to cease receiving waste and initiate closure.  85 Fed. Reg. 53,516 (Aug. 28, 2020) ("2020 Rule").  A regulated entity could, however, apply to EPA for an extension of that deadline for a given unit if the entity submitted an adequate demonstration that the *entire facility* was in compliance with *all* applicable CCR-disposal regulations, including the Waste-in-Place Closure Requirements and requirements governing groundwater monitoring and sampling.  85 Fed. Reg. at 53,540/3-53,546; 40 C.F.R. § 257.103(f)(1)(iii)-(viii).  Under these provisions, EPA cannot extend any cease-receipt-of-waste deadline for an unlined surface impoundment past October 15, 2023—or, if specified conditions are met, October 15, 2024. 40 C.F.R. § 257.103(f)(1)(vi).

### B.    Gavin's Extension Request for its Bottom Ash Pond

In 2020, Gavin applied to extend until May 4, 2023, the deadline to cease receipt of waste and initiate closure of the Bottom Ash Pond at its Cheshire plant.  Am. Compl. ¶¶ 5-6.  The timely application "toll[ed]" the Bottom Ash Pond's cease-receipt-of-waste deadline "until issuance of a decision" by EPA, which decision must prescribe a new deadline.  40 C.F.R. § 257.103(f)(iii)(2).  Gavin did not apply to extend the cease-receipt-of-waste deadline for its Fly Ash Reservoir at the same plant.  Am. Compl. ¶¶ 5, 58.

In January 2022, EPA proposed to deny Gavin an extension for the Bottom Ash Pond; on the same day, but in separate documents, EPA proposed to deny extension requests submitted by other entities and issued related documents ("January 2022 documents").  Am. Compl. ¶¶ 40, 58.

6

On November 18, 2022, EPA published notice in the Federal Register of a final decision denying Gavin's extension request for the Bottom Ash Pond and setting a new deadline of April 12, 2023.  Ex. A (Denial Order).  EPA gave several independent reasons for denying the request, among them that the 314-acre unlined Fly Ash Reservoir at the Cheshire plant had closed with CCR sitting in groundwater up to 64 feet deep, saturating up to 40% of the CCR in the unit.  Ex. A at 13-45.  EPA reasoned that Gavin had failed to demonstrate that it was in compliance with the Waste-in-Place Closure Requirements at the plant.  *Id*.  Separately, Gavin had also failed to demonstrate that the plant's monitoring and sampling were in compliance with various requirements of the 2015 Rule.  *Id.* at 45-76.  EPA's decision did not order Gavin to remedy, or threaten penalties for, the finding that Gavin did not demonstrate facility-wide compliance with EPA regulations.  The decision merely prescribed a cease-receipt-of-waste deadline for the Bottom Ash Pond of April 12, 2023, which was 22 days before the deadline Gavin had sought in its 2020 extension application.

### C.    Gavin's D.C. Circuit Challenge to EPA's Denial Order

On February 16, 2023, approximately two months before the deadline for the Bottom Ash Pond to cease receipt of waste pursuant to EPA's Denial Order, Gavin petitioned the D.C. Circuit to review EPA's order.  *Gavin Power LLC v. EPA*, D.C. Cir. No. 23-1038, Doc. 1986478. RCRA vests the D.C. Circuit with exclusive jurisdiction to review "action of the [EPA] Administrator in promulgating any regulation, or requirement" under the statute.  42 U.S.C. § 6976(a)(1).  Gavin styled its petition as "protective," maintaining that the order was a "final agency action" subject to APA review in district court.  *Id.*  Nonetheless, Gavin (joined by other parties that had sought D.C. Circuit review of the Bottom Ash Pond extension Denial Order) filed a merits brief arguing that if the court were to hold that EPA's other actions on January 11,

2022, did not promulgate a regulation or requirement—as the D.C. Circuit ultimately did hold, *see Elec. Energy*, 106 F.4th at 40-44—then EPA's extension Denial Order for the Bottom Ash Pond promulgated a regulation or requirement, giving the D.C. Circuit jurisdiction.  Ex. B (Gavin's Brief) at 5-6.  Gavin's theory was that, in finding that Gavin failed to demonstrate the Cheshire plant was in compliance with the 2015 Rule at the time of its extension application, EPA had amended that Rule and its prior interpretations thereof.

The D.C. Circuit rejected Gavin's position and dismissed its petition for review, holding that EPA's Denial Order imposed no new "regulation" or "requirement" on Gavin.  *Elec. Energy*, 106 F.4th at 45-47.  The court held that "EPA regulations adopted long before 2022 [i.e., the 2015 Rule] independently established that unit operators could not close surface impoundments with coal residuals saturated in groundwater.  EPA did not amend the existing regulations when it spelled that out in the final Gavin Denial."  *Id.* at 45.  Nor was the court "persuaded by [Gavin's] assertion that EPA announced, in the final Gavin Denial, an interpretation of the term 'infiltration' in 40 C.F.R. § 257.102(d)(1)(i) that conflicts with its prior description of the term 'infiltration. as 'applying 'only' to 'percolation' through the cap.'" "[T]hat description pre-dates the 2015 Rule, and nothing in the 2015 Rule itself suggests that EPA incorporated that understanding or expressly limited 'infiltration' in that manner."  *Id.*  By denying Gavin an extension of the cease-receipt-of-waste deadline for the Bottom Ash Pond, EPA "impose[d] no new legal obligations on Gavin," *id.* at 46; even the deadline the order prescribed is traceable to the 2020 Rule, *id.* at 47.

Gavin did not seek further review of the D.C. Circuit's judgment.

### D.    The Present Suit Challenging EPA's Denial Order

Gavin filed this suit in February 2024, while its D.C. Circuit suit remained pending, but

many months after the extended deadline that Gavin had requested to cease receipt of waste and initiate closure of the Bottom Ash Pond had lapsed.  Gavin asserts that it "met EPA's deadline to initiate closure," Am. Compl. ¶ 69, citing a notice stating that the Bottom Ash Pond ceased receiving waste on April 7, 2023, *id.* ¶ 69 n.17.

Counts I-III of the amended complaint plead claims under the APA.  Count I alleges that EPA unlawfully applied a "new 2022 Interpretation" of the 2015 Rule in finding that the Fly Ash Reservoir was closed improperly.  *Id.* ¶ 84.  Count II alleges that EPA applied "new requirements," thereby making a suite of "erroneous findings" in concluding that the Cheshire plant was not in compliance with the CCR-disposal regulations.  *Id.* ¶ 88.  Count III alleges that EPA failed to provide fair notice of an alleged "new 2022 Interpretation" of the 2015 Rule, which it applied to Gavin's facility.  *Id.* ¶ 112.  Count IV, entitled "Waiver," invokes no cause of action but alleges that EPA's inaction until 2022 "waived its right to determine … that the Fly Ash Reservoir closure, related documentation, or the [plant's] groundwater monitoring did not comply with the [2015] Rule."  *Id.* ¶ 127.  Count V, entitled "Estoppel," likewise invokes no cause of action but alleges that EPA "is estopped from challenging the adequacy of [the] Fly Ash Reservoir closure" or "compliance of the [plant's] groundwater monitoring network."  *Id.* ¶¶ 142-43.  Gavin seeks "a declaratory judgment, holding unlawful and setting aside EPA's unlawful, arbitrary, and capricious decisions as to the [Cheshire plant];" an order "[v]acating EPA's determinations in the [Denial Order] concerning regulatory compliance at the [plant];" and an order "enjoin[ing] EPA from enforcement action based on the vacated determinations." *Id.* at p. 42.

## STANDARD FOR DECISION

This motion presents a facial challenge to this Court's subject-matter jurisdiction under

Rule 12(b)(1), as well as a challenge under Rule 12(b)(6) for Gavin's failure to state a claim. In evaluating both types of challenges, this Court must accept as true the complaint's well-pleaded factual allegations, *see L.C. v. United States*, 83 F.4th 534, 542 (6th Cir. 2023) (Rule 12(b)(1)); *Lindke v. Tomlinson*, 31 F.4th 487, 496 (6th Cir. 2022) (Rule 12(b)(6)), but the Court "need not accept legal conclusions or unwarranted factual inferences." *U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 409 (6th Cir. 2016) (citation omitted). The Court "may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to [the] motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

## ARGUMENT

This Court should dismiss the amended complaint in full because Gavin fails to present any claim for which it both (1) has a cause of action to sue EPA and (2) alleges facts sufficient to support Article III jurisdiction. Apart from that fatal defect, each of Gavin's claims rests in whole or in part on one central premise—that EPA's Denial Order imposes legal consequences other than the deadline set for the Bottom Ash Pond—an argument expressly rejected by the D.C. Circuit, in litigation between the same parties that resulted in a final judgment. The doctrine of issue preclusion doctrine bars relitigation of that central premise. Last, and at the least, Counts IV and V of the amended complaint (Waiver and Estoppel) are not claims but defenses—and facially meritless ones, at that—thereby requiring their dismissal.

## I.    GAVIN FAILS TO CHALLENGE FINAL AGENCY ACTION THAT PRESENTS A JUSTICIABLE CONTROVERSY

As the Sixth Circuit has noted, "it is possible that a plaintiff can have a cause of action— a legally recognized mechanism of obtaining a remedy—and yet no Article III standing to assert that cause of action in federal court. Conversely, it is also possible to have a redressable, de

10

facto injury sufficient to confer Article III jurisdiction, and yet have no recognized cause of action to vindicate that interest." *Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1058 (6th Cir. 2022) (citation omitted).  In this case, where Gavin's claim is based on final agency action, Gavin cites no redressable injury; and where Gavin alleges arguably sufficient injury, it is not traceable to a final agency action that is subject to challenge.  Because Gavin cannot mix and match the two, its claims must be dismissed.

The APA authorizes courts to "hold unlawful and set aside agency action, findings, and conclusions," 5 U.S.C. § 706(2), but an APA cause of action is not triggered by mere findings and conclusions.  Only a "final agency action for which there is no other adequate remedy in a court [is made] subject to judicial review."  *Id.* § 704 (emphasis added).  To be "final," an agency action must not only "mark the consummation of the agency's decisionmaking process" but also "be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett*, 520 U.S. at 178 (cleaned up).  And, crucially for this case, finality is issue-specific—a single agency order may be "final" in one respect but not others.  *See Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 638 (6th Cir. 2004).

The sole aspect of the challenged order that meets both finality criteria is EPA's prescription of a deadline (April 12, 2023), and corresponding denial of Gavin's requested deadline (May 4, 2023), for the Bottom Ash Pond to cease receiving waste and to initiate closure.  EPA does not dispute that this specific aspect of the Denial Order—which had a direct, immediate, and binding effect on Gavin's conduct as to the Bottom Ash Pond—is final.  And, if Gavin had articulated an Article III injury redressable by vacatur of that deadline (and, ultimately, EPA's prescription of a different deadline), this Court would have jurisdiction also to review the various "findings" and "conclusions" that underlay EPA's decision to deny Gavin an

11

extension. 5 U.S.C. § 706(2). But the only injury that the amended complaint links to the Bottom Ash Pond cease-receipt-of-waste deadline is one Gavin suffered before it filed suit: the "tremendous expense, operational challenge, and disruption" occasioned by the need to meet EPA's deadline. Am. Compl. ¶ 69. That wholly past injury is not redressable by the wholly prospective relief sought in the complaint—a declaratory judgment and an injunction. *See, e.g.*, *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 31 (2010) (describing both declaratory and injunctive relief as prospective). Because the amended complaint does not allege any injury that can be redressed by the types of relief sought in the amended complaint, Gavin has not met its burden at the pleading stage to allege standing to challenge the closure deadline.

The next question is whether Gavin is entitled to challenge "findings" and "conclusions" that underlay EPA's decision to deny the company's request for a deadline extension. 5 U.S.C. § 706(2). Gavin alleges present and ongoing injuries that it traces to the agency's findings that the Cheshire plant was out of compliance with various CCR-disposal regulations. Am. Compl. ¶¶ 19-21. Without conceding that these injuries (if proven) would confer standing, EPA submits that Gavin lacks a cause of action to challenge the bare agency findings and conclusions because they are not "final agency action." 5 U.S.C. § 704.

For starters, findings and conclusions are not "agency actions." The plain text of the APA differentiates findings and conclusions from agency action, *see* 5 U.S.C. § 706(2), and nothing in the list of items that the statute denominates as "agency action" (rules, orders, licenses, sanctions, relief, and the equivalent or denial thereof) encompasses unadorned findings and conclusions. *Id.* § 551(13); *see also id.* § 701(b)(2) (applying this definition to Section 704's cause of action). As most relevant here, an "order" is "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other

12

than rule making but including licensing." *Id.* § 551(6). EPA "final[ly] dispos[ed]" of the "matter" of the Bottom Ash Pond deadline by denying Gavin's application and setting another deadline; there was, however, no freestanding matter for EPA to decide concerning the Cheshire plant's regulatory compliance.

Even if EPA's findings and conclusions as to the plant's overall regulatory compliance—made in the course of resolving a different matter entirely—were "agency action," they were not "final" within the meaning of the APA cause of action because they did not determine "rights or obligations" or carry "legal consequences." *Bennett*, 520 U.S. at 178. The D.C. Circuit spoke to this point directly: the challenged Denial Order "imposes no new legal obligations on Gavin." *Elec. Energy*, 106 F.4th at 46.

To be sure, EPA has not backed away from the findings and conclusions in its Denial Order respecting the Cheshire plant's compliance with CCR regulations; and, if those findings and conclusions are correct (and proved to be so, in any future enforcement suit), then RCRA and EPA's regulations may authorize sanctions, like penalties. Gavin may dispute any fact EPA might present in any future enforcement proceeding, irrespective of any findings EPA may have made in concluding merely that Gavin had failed to meet its burden under the regulation of demonstrating that, at the time of its extension application for the Bottom Ash Pond, its facility was in compliance with all regulatory requirements. Gavin Denial Order, 4-5, 94.[1]

In setting out its position on the subject, EPA has not determined Gavin's rights, forced Gavin to act, committed to pursuing enforcement action, or lessened the government's burden of proof (or exposed Gavin to additional sanctions) in an enforcement suit. *Compare U.S. Army*

---

[1] As discussed *infra* at 16-17, Gavin may not re-litigate EPA's legal interpretation of what is required under the 2015 Rule, as that legal issue has been finally decided by the D.C. Circuit.

*Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 & n.3 (2016) (deeming an affirmative determination of regulatory jurisdiction final insofar as it "deni[ed] … the safe harbor that negative [jurisdictional determinations] afford" and "b[ou]nd" agency in an enforcement proceeding), *with Air Brake Sys.*, 357 F.3d at 644 (deeming regulatory interpretation in agency opinion letter non-final and unreviewable because it did not have "direct, binding effect" or "legal consequences for [the recipient] by virtue of the deference courts might give to [the interpretation]"). No finding or conclusion in EPA's Denial Order "expose[s]" Gavin "to criminal or civil liability," "definitively determine[s] legal rights or obligations," or "bind[s] an agency or prevent[s] other government actors from pursuing a particular course of action." *Parsons v. U.S. Dep't of Justice*, 878 F.3d 162, 167 (6th Cir. 2017). "[R]eputational and personal harms … may be the practical consequences" when EPA states its position that a party is out of compliance with the law, "but they are not a direct or appreciable legal consequence" sufficient to render agency action "final." *Id.* at 170. Gavin thus lacks a cause of action to challenge EPA's findings and conclusions.

Even if Gavin possessed a cause of action, however, its amended complaint does not present a ripe controversy. A "claim[] must satisfy both the fitness and the hardship components of the [ripeness] inquiry" to be justiciable. *Airline Pros. Ass'n of the Int'l Brotherhood of Teamsters, Local Union No. 1224, AFL-CIO v. Airborne, Inc.*, 332 F.3d 983, 988 (6th Cir. 2003). This case satisfies neither prong.

In a pre-enforcement context, the fitness prong of the ripeness inquiry turns in substantial part on "whether the factual record is sufficiently developed to produce a fair adjudication of the merits." *Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 561 (6th Cir. 2008). While EPA considered all available information and conducted technical analyses in concluding

14

that Gavin had failed to demonstrate that the Cheshire plant complied with regulatory requirements as of 2022, additional fact-gathering and analyses would be required to initiate an enforcement suit. In part, this is because the burdens involved in each type of proceeding are markedly different: to obtain an extension of the deadline, Gavin was required to demonstrate that it was in compliance with all of part 257 at the time of its extension application. 40 C.FR. § 257.103(f)(1)(viii). In contrast, in an enforcement proceeding, EPA bears the burden of proving any alleged non-compliance. Moreover, in determining a RCRA penalty, a court normally considers factors like "the seriousness of the violation and any good faith efforts to comply," "the harm caused by the violation, any economic benefit derived from noncompliance, the violator's ability to pay, the government's conduct, and the clarity of the obligation involved." *United States v. Ekco Housewares, Inc.*, 62 F.3d 806, 814 (6th Cir. 1995). EPA did not consider a number of these factors in finding that Gavin failed to demonstrate that the Cheshire plant was in regulatory compliance, because they had no relevance to the only decision before the Agency at the time: whether to extend the Bottom Ash Pond's deadline. The additional factors pertinent to enforcement, which may require consideration of expert testimony, fall well outside the scope of the administrative record for the Denial Order.

The hardship prong of the ripeness inquiry asks whether the hardship to the parties from delaying judicial review outweighs the benefits of awaiting a more fleshed-out setting. Although Gavin alludes to costs of modifying the closure of the Fly Ash Reservoir, Am. Compl. ¶ 19, the amended complaint does not indicate that Gavin intends to perform that work if it does not obtain judicial review now. The only actual or imminent harms alleged are the "ongoing risk of civil penalties" and harm to Gavin's reputation. *Id.* ¶ 21. In any suit for enforcement that EPA might choose to file, Gavin will have a full and fair opportunity to dispute findings and

15

conclusions underlying a determination of liability, and should Gavin prevail, it will not be assessed a penalty. As for reputational injury, even assuming it sufficed to show standing (it does not in this case), "the size of the harm matters tremendously in determining whether a claim is ripe," *Airline Pros.*, 332 F.3d at 988 n.4. The amended complaint does not allege certain, great reputational harm from the Denial Order.

## II.  **GAVIN'S CLAIMS ARE FORECLOSED BY ISSUE PRECLUSION**

Under the issue-preclusion doctrine, "the determination of a question directly involved in one action is conclusive as to that question in a second action." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (quotation omitted). The doctrine bars "relitigation of issues of fact or law actually litigated and decided in a prior action … even if decided as part of a different claim or cause of action." *Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012). In litigation between Gavin and EPA, the D.C. Circuit decided the core issue animating Gavin's amended complaint here: whether legal conclusions that underlie EPA's Denial Order, in particular the agency's interpretations of the 2015 Rule, constitute new or modified regulatory requirements. *See Elec. Energy*, 106 F.4th at 35-45.

The D.C. Circuit had to "actually and necessarily determine[]" that issue to evaluate its own statutory subject-matter jurisdiction, *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994), which turned on whether the Denial Order "promulgat[ed] any regulation, or requirement," 42 U.S.C. § 6976(a)(1). While the D.C. Circuit ultimately held that it lacked jurisdiction, its judgment has issue-preclusive effect because, like any federal court, the D.C. Circuit was "a court of competent jurisdiction," *Black*, 15 F.3d at 582, to determine its own jurisdiction, *see Brownback v. King*, 592 U.S. 209, 218 (2021).

16

Raising essentially the same arguments it presents here, Gavin argued to the D.C. Circuit that EPA's Denial Order had imposed "new requirements" that departed from the 2015 Rule and its prior interpretations thereof. *Compare* Ex. B at 31-32 *with* Am. Compl. ¶¶ 80-84, 88-90, 107-13, 124-27, 138-43. The D.C. Circuit squarely rejected Gavin's arguments. The court explained that the legal underpinning of EPA's assessment of plantwide noncompliance with the 2015 Rule was not a novel and strained interpretation of the Rule, but rather the unavoidable construction of the regulatory language, standing on its own. *See* p. 8 *supra*; *Elec. Energy*, 106 F.4th at 40-43, 45. Regardless of how many causes of action Gavin raises, the central claim underlying each of them has been decided, in a suit challenging the exact same order involving the same parties, and Gavin is barred from relitigating that claim here.[2]

## III. WAIVER AND ESTOPPEL ARE NOT CAUSES OF ACTION, NOR ARE THEY ACTIONABLE AGAINST THE UNITED STATES ON THE FACTS ALLEGED

If nothing else, the Court should dismiss Count IV ("Waiver") and Count V ("Estoppel"). Waiver and estoppel are affirmative defenses enumerated in Federal Rule of Civil Procedure 8(c)(1). They are not claims upon which relief can be granted. *See Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 n.1 (6th Cir. 2009) ("[E]quitable estoppel is not a cause of action but a judicial doctrine that bars the assertion of a claim or defense."); 28 Am. Jur. 2d Estoppel & Waiver § 183 ("Waiver is not a cause of action because it cannot create liability in

---

[2] To the extent any remnant of Gavin's claims is not precluded, Gavin has not alleged standing to move forward with that remnant. For example, the amended complaint does not allege injury flowing from EPA's findings and conclusions as to groundwater monitoring at the Cheshire plant. Indeed, to secure an extension for closure of the Bottom Ash Pond, Gavin had to demonstrate that it was following *all* regulatory requirements and, as outlined above, the D.C. Circuit has already found that Gavin failed to demonstrate that it was in compliance with the Waste-in-Place Closure requirements. There is, therefore, no basis for this Court to address other findings that EPA made, such as those related to the adequacy of Gavin's groundwater monitoring, as it cannot possibly alter the Denial Order being challenged in this case and Gavin is thereby not injured by such findings.

17

and of itself, and a cause of action cannot be based on a waiver."); *Infinity Roofing & Siding, Inc. v. Allstate Ins. Co.*, No. 21-cv-889, 2022 WL 19005152 at *1 (W.D. Mich. Dec. 12, 2022) ("[W]aiver and estoppel are not causes of action that may be asserted in a complaint."). This alone requires dismissal of Counts IV and V.

Even if waiver or estoppel could be asserted as a claim, Gavin's allegations fail to state an actionable claim. As to waiver, other than Paragraph 124, the amended complaint does not allege affirmative waiver but only that the government slept on its rights. That amounts to a laches defense, to which "the United States is not … subject … in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940).

Paragraph 124 cites EPA's "affirmative[] represent[ation]" that the 2015 Rule "does not require clean closure of any unit." Am. Compl. ¶ 124. That statement was and remains true today. As EPA explained, an entity may close an impoundment by leaving CCR in the unit, but it still must comply with the Waste-in-Place requirements in doing so. Ex. A at 28-30. Gavin inferred that "closure in place for the Fly Ash Reservoir would be a permissible closure method under the CCR Rule," Am. Compl. ¶ 124, allowing it to ignore all of the provisions establishing how closure-in-place must be accomplished. But that inference is wholly unwarranted, as the Waste-in-Place Closure Requirements apply to any closure that leaves CCR in a unit. *See supra*, at 4; *Elec. Energy*, 106 F.4th at 36. Gavin's waiver claim/defense is legally insufficient.

As to estoppel, the United States "may not be estopped on the same terms as any other litigant." *Premo v. United States*, 599 F.3d 540, 547 (6th Cir. 2010). The "[p]laintiff must show some affirmative misconduct," meaning "an act by the government that either intentionally or recklessly misleads the claimant." *Id.* (cleaned up). Gavin supports its estoppel "claim" with the same allegations it advances to support waiver, asserting that EPA failed to act sooner to inform

Gavin that its FAR facility might not be in compliance with regulatory requirements.

But EPA inaction is, by definition, not "affirmative misconduct." *See United States v. City of Toledo*, 867 F. Supp. 603, 607-08 (N.D. Ohio 1994). And EPA's representation about clean closure (recited this time in Paragraph 139) should not have been misleading to anyone who read the 2015 Rule. In any event, even if EPA's representation misled Gavin, "reliance on misinformation provided by a government employee does not provide a basis for an estoppel." *Fuller v. United States*, 475 F.Supp.3d 762, 767 (S.D. Ohio 2020). Estoppel will not lie "where '[t]he government was not attempting to trick' the party asserting estoppel . . . [or was] not acting with malicious intent." *Kerger v. United States*, 609 F.Supp.3d 562, 577 (N.D. Ohio 2022) (quotations omitted). There is no allegation of trickery or malicious intent by EPA in the amended complaint. Gavin's estoppel claim/defense is legally insufficient.

## CONCLUSION

For the foregoing reasons, this action should be dismissed.

Respectfully submitted this 16th day of October, 2024,

OF COUNSEL:

LAUREL CELESTE
U.S. Environmental Protection Agency
Office of General Counsel
William Jefferson Clinton Building
1200 Pennsylvania Ave., NW
Mail Code 2344A
Washington, D.C. 20460

TODD KIM
Assistant Attorney General

/s/ *Perry M. Rosen*
PERRY M. ROSEN
United States Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington D.C. 20044
202-353-7792
perry.rosen@usdoj.gov

KENNETH L. PARKER
United States Attorney

JOHN STARK
Assistant United States Attorney

19

U.S. Attorney's Office for the Southern
  District of Ohio
303 Marconi Blvd., Suite 200
Columbus, Ohio 43215
(614) 469-5715

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Motion was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of said filing to the attorneys of record for Petitioners and all other parties, who have registered with the Court's CM/ECF system.

So certified this 16th day of October, 2024 by

/s/ *Perry M. Rosen*
Perry M. Rosen
Counsel for Defendants